IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

TEDDRICK LAMAR SMITH,

    Petitioner,

v.                                                                                                        No. 1:15-cv-01097-JDB-egb

UNITED STATES OF AMERICA,

    Respondent.

---

ORDER DENYING § 2255 MOTION,
DENYING RELIEF UNDER *JOHNSON V. UNITED STATES*,
DENYING CERTIFICATE OF APPEALABILITY, AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

---

On April 27, 2015, Petitioner, Teddrick Lamar Smith, filed a *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 ("Petition"). (Docket Entry ("D.E.") 1.) He subsequently added a claim seeking relief under *Johnson v. United States*, 135 S. Ct. 2551 (2015). (D.E. 4.) For the reasons that follow, the Petition and the *Johnson* claim are DENIED.[1]

**BACKGROUND**

In April 2012, Smith was indicted by a federal grand jury on one count of conspiring to "manufacture, distribute and attempt to distribute, and possess with intent to distribute more than 28 grams of . . . cocaine base (crack cocaine) . . . and to possess with intent to distribute more than 500 grams of cocaine," in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 1); and one count of possessing and distributing cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C.

---

[1] All record citations are to documents filed in Case Number ("No.") 15-cv-01097, unless otherwise noted.

§ 2 (Count 3).² (No. 12-cr-10040, D.E. 2 at PageID 7-8, 10.) Attorney Lee Sparks was appointed as defense counsel. Defendant subsequently requested new counsel, and the Court appointed attorney Mike Scholl.

According to the Presentence Report ("PSR"), the charges against Smith arose from the FBI's interception of several calls he placed to a certain cell phone number in November and December 2011. During one of the calls, he asked to purchase approximately 125 grams of cocaine. During another, he "discussed and made arrangements for the purchase of . . . approximately 226 grams . . . of cocaine." (PSR ¶ 11 (emphasis omitted).)

In February 2013, Petitioner entered into a plea agreement with the Government. (No. 12-cr-10040, D.E. 430.) He agreed to plead guilty to Count 3 of the indictment, stipulate to the drug quantity, waive his right to take a direct appeal except under narrow circumstances, and waive his right to collaterally attack his sentence. For its part, the Government agreed to dismiss Count 1 as to Smith, stipulate to the drug quantity, move for the application of acceptance of responsibility points, and recommend a sentence within the advisory sentencing range under the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.").

The inmate subsequently pleaded guilty at a hearing before the Court. (*Id.*, D.E. 428.) After the required colloquy, *see* Fed. R. Crim. P. 11(b), the Court accepted the plea. (*Id.*, D.E. 516 at PageID 965.)

In April 2013, the United States Probation Office submitted the PSR to the parties, setting forth the calculation of Defendant's Guidelines sentencing range.³ The PSR assigned a base

---

²The indictment was brought against fourteen individuals. Petitioner was not named in Count 2 of the indictment.

³Except where noted, all references to the Guidelines are to the 2012 Guidelines in effect on the date of Smith's sentencing. *See* United States Sentencing Commission, *Guidelines Manual* (Nov. 2012).

offense level of 22 based on a drug quantity of 351 grams. *See* U.S.S.G. § 2D1.1. The offense level was enhanced to 32 under the career offender provision. *See* U.S.S.G. § 4B1.1(b)(3). The predicate offenses for the enhancement were two Tennessee convictions for the sale of marijuana and one Tennessee conviction for evading arrest in a motor vehicle. A total offense level of 29 was arrived at after a three-point reduction for acceptance of responsibility. "Based upon a total offense level of 29 and a criminal history category of VI, the [G]uideline[s] imprisonment range" was calculated to be 151-188 months. (PSR ¶ 87.)

Defense counsel filed a position statement in which he "object[ed] to . . . a career offender" sentence. (No. 12-cr-10040, D.E. 497 at PageID 892.) He argued that a 151-month sentence as a career offender would be "disproportionate to the . . . sentences received" by his co-defendants in light of his "record and . . . role in the offense." (*Id*.)

The sentencing hearing was held on August 27, 2013. (No. 12-cr-10040, D.E. 498.) Defense counsel argued for a below-Guidelines sentence. The Court asked Defendant if he "had the opportunity to receive and review a copy of the presentence report and discuss that with [his] attorney," and Smith answered, "Yes, sir." (*Id.*, D.E. 517 at PageID 986.) The Court determined that the drug quantity was 351 grams, found Defendant to be a career offender, and applied a three-point reduction for his acceptance of responsibility. The Court imposed a below-Guidelines sentence of 120 months of incarceration and three years of supervised release. (*Id.*, D.E. 498.)

Petitioner appealed his sentence on the ground that his guilty plea was involuntary due to the ineffective assistance of counsel. He specifically argued that counsel should have challenged the use of his evading arrest conviction as a predicate offense under the Guidelines' career offender provision. The appellate court held that the argument was without merit under Sixth

3

Circuit precedent, but recognized that Defendant was preserving the issue. (*Id.*, D.E. 536 at PageID 1059.) He filed a petition for writ of certiorari, which was denied. *See Smith v. United States*, 134 S. Ct. 1923 (Mem.) (2014).

On April 23, 2015, the inmate submitted his federal Petition to prison authorities for mailing. (D.E. 1 at PageID 12.) The Petition presented the following claims:

> Claim 1: The guilty plea was involuntary and unknowing due to counsel's ineffective assistance in failing to explain to Petitioner "what he was actually pleading guilty to," failing to explain the terms of the plea agreement, failing "to prepare for trial," and "pres[s]ur[]ing him into believing a guilty plea was his only option and alternative."[4] (*Id.* at PageID 4, 6.)
>
> Claim 2: The Court "erred in determining the drug quantity attributable" to Petitioner. (*Id.* at PageID 5.)

On August 10, 2015, the inmate filed a document supplementing the Petition with a claim under *Johnson*. (D.E. 4.) Appointed counsel submitted a supplemental memorandum in support of the claim, (D.E. 6-1), and the Court ordered the Government to respond to all claims, (D.E. 10).

Respondent filed a response on May 8, 2018. (D.E. 11.) Petitioner did not file a reply, although allowed to do so, (D.E. 10 at PageID 46).

## LEGAL STANDARDS

A prisoner seeking to vacate his sentence under § 2255 "must allege either: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 391, 496-97 (6th Cir. 2003)).

---

[4]For clarity's sake, the Court has liberally construed Grounds One and Two of the Petition as stating a single claim for attorney ineffective assistance at the plea stage.

1. **Involuntary Plea**

A claim that the petitioner's guilty plea was involuntary is controlled by the standards set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969), and *Brady v. United States*, 397 U.S. 742 (1970). Under those cases, "[a] guilty plea is valid only if the defendant knowingly, intelligently and voluntarily waives the many constitutional rights associated with a criminal trial . . . and has 'sufficient awareness of the relevant circumstances and likely consequences' of the plea." *United States v. Taylor*, 281 F. App'x 467, 469 (6th Cir. 2008) (quoting *Brady*, 397 U.S. at 748) (citing *Boykin*, 395 U.S. at 243). "At a minimum, the defendant must understand the 'critical' or 'essential' elements of the offense to which he or she pleads guilty." *United States v. Valdez*, 362 F.3d 903, 909 (6th Cir. 2004) (citing *Bousley v. United States*, 523 U.S. 614, 618-19 (1998)). "The satisfaction of these requirements cannot be inferred from the bare fact that the defendant pleaded guilty, because he still might not have known what he was giving up when he did so." *Ruelas v. Wolfenbarger*, 580 F.3d 403, 409 (6th Cir. 2009) (citing *Boykin*, 395 U.S. at 243).

2. **Ineffective Assistance of Counsel**

A § 2255 claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." *Id.* at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of

5

ineffective assistance must apply "a strong presumption" that counsel's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Prejudice is established where there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) ("Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" (quoting *Strickland*, 466 U.S. at 687)).

*Strickland*'s two-pronged test applies where a defendant alleges that his guilty plea was not knowing and voluntary due to the ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). To establish prejudice in the plea context, a petitioner must show that if counsel had not performed deficiently, there is a "reasonable probability" that he would not have pleaded guilty but instead would have proceeded to trial. *Id.* at 59. The reasonable probability test is objective, not subjective; the "petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) (citation omitted).

## DISCUSSION

Respondent argues that Petitioner is not entitled to relief under § 2255 because "[h]is original [Petition] was untimely; he previously waived his collateral attack rights; he

procedurally defaulted certain of his claims; some of his claims are non-cognizable; and the underlying claims are meritless." (D.E. 11 at PageID 54.) Petitioner did not respond to these arguments.

    1. **Statute of Limitations**

In most cases, a federal criminal defendant is limited to one collateral attack filed within one year of the date his conviction became final. 28 U.S.C. § 2255(f)(1). Generally, "a conviction becomes final for purposes of collateral attack at the conclusion of direct review." *United States v. Cottage*, 307 F.3d 494, 498 (6th Cir. 2002).

Here, the inmate's conviction became final on April 21, 2014, when the United States Supreme Court denied certiorari. *See Smith*, 134 S. Ct. 1923. The limitations period began to run the next day and expired one year later, on April 21, 2015. *See Bronaugh v. Ohio*, 235 F.3d 280, 285 (6th Cir. 2000) (holding that, where the petitioner's conviction became final on September 9, 1996, the one-year limitations period began to run the next day and, absent tolling, would have expired on September 9, 1997); *see also Merriweather v. City of Memphis*, 107 F.3d 396, 398 (6th Cir. 1997) (citations omitted) (holding that a one-year limitations period generally "ends on the same calendar date the following year").

The Petition, which was submitted to prison authorities for mailing on April 23, 2015, is thus untimely by two days. "Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Jurado v. Burt*, 337 F.3d 638, 643 (6th Cir. 2003) (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000)). The inmate has not identified any such considerations. The late filing is therefore unexcused.

The claims set forth in the Petition are DISMISSED as untimely.[5]

The Court nevertheless addresses the Government's waiver argument and the merits of all claims.[6]

## 2. Waiver

Respondent argues that the Court need not reach the merits of Smith's claims because he waived his right to bring them. Petitioner has not responded to the Government's waiver argument. He asserts in the Petition, however, that his guilty plea, which included his collateral-rights waiver, was not knowing and voluntary due to the ineffective assistance of counsel.

A defendant's waiver of his right to collaterally attack his conviction and sentence pursuant to § 2255 is enforceable if entered into "knowingly, intelligently, and voluntarily." *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001) (citation omitted). A defendant may thus challenge the voluntariness of his plea and waiver in a § 2255 proceeding. *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007) (holding that a waiver of § 2255 rights cannot foreclose evaluation of an argument that the guilty plea was not knowing and voluntary, or was the product of ineffective assistance of counsel).

As discussed immediately below, the Court finds that the guilty plea was not involuntary due to the ineffectiveness of counsel. Instead, the record in the inmate's criminal case shows that

---

[5]The *Johnson* claim is not untimely. Petitioner filed the claim on August 10, 2015, which was less than one year after the United States Supreme Court's decision in *Johnson*. *See* 28 U.S.C. § 2255(f)(3) (providing that the one-year limitations period for a newly recognized claim runs from "the date on which the right asserted was initially recognized by the Supreme Court").

[6]A § 2255 petitioner is entitled to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The records in Petitioner's criminal case conclusively show that he is not eligible for relief on his claims. An evidentiary hearing is therefore unnecessary.

he voluntarily and knowingly entered a plea of guilty and waived his right to bring claims under § 2255. The waiver is thus enforceable.

### 3. Claim 1: Involuntary Plea Due to Ineffective Assistance of Counsel

Smith asserts that his guilty plea was "unknowing, unintelligent and involuntary" due to defense counsel's ineffective assistance. (D.E. 1 at PageID 4.) He alleges that counsel "pres[s]ur[ed] him into believing a guilty plea was his only option and alternative." (*Id.* at PageID 6.) He also insists that the plea was involuntary because counsel was unprepared for trial and did not explain to him the charge to which he was pleading guilty or the terms of the plea agreement. The inmate claims he therefore "didn't have a clue as to what he was actually pleading guilty to or the language contained in the plea agreement." (*Id.* at PageID 4.)

Petitioner has not shown that his guilty plea was involuntary due to attorney ineffectiveness. To begin with, his conclusory allegations that counsel pressured him into pleading guilty and did not prepare for trial are not supported by specific factual allegations. The general allegations are therefore disregarded. *See Wogenstahl v. Morgan*, 668 F.3d 307, 343 (6th Cir. 2012) ("Merely conclusory allegations of ineffective assistance . . . are insufficient to state a constitutional claim." (citation omitted)).

In addition, the record in the inmate's criminal case undermines his allegation that he "didn't have a clue" about the charge to which he was pleading guilty or the terms of the plea agreement. That agreement, which Petitioner signed, contained the following terms:

1. To stipulate "that the most readily provable amount of drugs for which [he] should be held accountable is at least 300 grams, but less than 400 grams of cocaine";

2. To waive his appellate rights as long as the sentence was below the statutory maximum and was not a "result of an upward departure from the [G]uideline[s] range that the [C]ourt establishes at sentencing";

9

3. "[T]o request that the . . . [C]ourt enter a specific finding that [his] waiver of his right to appeal the sentence . . . was knowing and voluntary"; and

4. To waive his right to collaterally attack his conviction and sentence and the manner in which the sentence was determined.

(No. 12-cr-10040, D.E. 430 at PageID 652, 654.)

Petitioner further acknowledged that he was "satisfied that all acts and/or any omissions of counsel for the defense have been the result of reasonable professional judgment and that [D]efendant has been provided adequate legal representation." (*Id.* at PageID 655.) For its part, the Government promised to dismiss Count 3 of the indictment as to Smith, stipulate to the drug quantity, and recommend a sentence within the Guidelines range.

At the start of the change of plea hearing, the Court advised Defendant that he should let the Court or his attorney know "[i]f there is anything . . . that you do not understand," and Smith stated that he would do so. (No. 12-cr-10040, D.E. 516 at PageID 947.) He answered, "Yes," when asked, "Did you sign and enter into [the plea] agreement following your discussion with your attorney and having reviewed that document with him, sir?" (*Id.* at PageID 955.) Defendant acknowledged that he was satisfied with the advice and representation of his attorney. The prosecutor summarized the plea agreement, including the waiver provisions. The Court asked Defendant if he understood and agreed to the terms of the plea agreement, and he stated that he did.

The Court read Count 3 of the indictment in its entirety in open court. Smith was then asked whether he understood what he was "being charged with in that count," and he answered, "Yes, sir." (*Id.* at PageID 952.) The Court advised him of the criminal trial rights he was giving up and the potential penalties for the crime to which he was pleading guilty, and he stated that he understood. He denied that anyone threatened or forced him to plead guilty, and he answered

10

"No" when asked whether "anyone made any promise or prediction to [him] about what [his] sentence would be if [he] plead guilty to [the] charge." (*Id.* at PageID 963.) Upon finding that Defendant was "freely and voluntarily pleading guilty," the Court accepted the plea. (*Id.* at PageID 965.)

Petitioner has not submitted any evidence calling into question his representation in the plea agreement that he was satisfied with his attorney's representation. He also does not identify any evidence contradicting his sworn testimony that he understood the terms of the plea agreement, the "many constitutional rights" he was waiving, *Taylor*, 281 F. App'x at 469, and the key "elements of the offense to which he" was pleading guilty, *Valdez*, 362 F. 3d at 909. His sworn testimony is a "formidable barrier" to § 2255 relief, which he has not overcome. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also Craig v. United States*, Nos. 2:08-CV-56, 2:04-CR-78, 2011 WL 864359, at *6 (E.D. Tenn. Mar. 10, 2011) (holding that "the transcript of the change of plea hearing confirm[ed] the knowing and voluntary nature of the waiver"), *aff'd*, 513 F. App'x 487 (6th Cir. 2013).

Finally, the bargain Petitioner received cuts against his bald assertion that, but for counsel's alleged deficient performance, he would have insisted on going to trial. *See Moore v. United States*, 676 F. App'x 383, 386 (6th Cir. 2017) (holding that, in determining whether a "rational" criminal defendant would have insisted on going to trial, a court must consider the "disadvantages" he would have faced had he rejected the plea offer). As the PSR noted, the dismissal of Count 1 "effectively eliminate[d] the potential for . . . statutory exposure" to forty years of incarceration. (PSR ¶ 88.) Moreover, Defendant received a three-level reduction for acceptance of responsibility, the Government's stipulation to a maximum drug quantity, and a promise by the Government to recommend a sentence within the Guidelines range.

11

On this record, Petitioner's claim that his plea agreement, which included a collateral-rights waiver, was involuntary and unknowing due to attorney ineffectiveness is without merit. Claim 1 is DENIED.

### 4. Claim 2: Erroneous Drug Quantity Determination

Smith maintains that the Court erred in determining the drug quantity attributable to him, arguing that the Court simply adopted the PSR's finding without independently verifying the amount. He cannot prevail on this claim.

The Guidelines in effect at the time of Petitioner's sentencing provided that an offense involving at least 300 grams but less than 400 grams of cocaine has a base offense level of 22. U.S.S.G. § 2D1.1. As noted, the PSR found that "the total amount of relevant conduct attributable to Smith is 351.0 grams of cocaine." (PSR ¶ 12.) Each party filed a position statement regarding the PSR's findings and recommendations, but neither party objected to the drug quantity finding. At sentencing, the Court determined that the drug quantity attributable to the Defendant was 351 grams.

Smith challenges the Court's drug quantity finding for the first time in this § 2255 proceeding. The claim, however, is not properly before the Court, as it is procedurally defaulted.

Claims that could have been raised on direct appeal, but were not, are procedurally defaulted and will not be entertained by motion under § 2255 unless the petitioner shows cause and actual prejudice to excuse his failure to raise the claims previously, or that he is actually innocent of the crime. *Bousley*, 523 U.S. at 622 (quoting *Murray v. Carrier*, 477 U.S. 478, 485, 496 (1986)). Ineffective assistance of appellate counsel may establish cause to excuse a procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).

The inmate did not raise the drug quantity issue on direct appeal, and he has not established cause to excuse the default. Although he asserts that appellate counsel was ineffective by not raising this issue, he has not identified any evidence that the drug quantity found by the Court was incorrect. He also has not shown, as he must, that the issue "was clearly stronger than [the] issue[] that counsel did present." *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003) (quoting *Smith v. Robbins*, 528 U.S. 259, 289 (2000)).

Even on its merits, however, Claim 2 would have to be denied. As noted, Smith has not offered any evidence that the drug quantity was less than 351 grams. Indeed, by the terms of the plea agreement, he stipulated that the quantity was at least 300, but less than 400, grams. As the Court has already determined, Petitioner knowingly and voluntarily agreed to all of the terms of that bargain.

For these reasons, Claim 2 is DISMISSED.

5. **Claim 3: Relief Under *Johnson***

Smith challenges his sentence based on the Supreme Court's ruling in *Johnson* that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), is unconstitutionally void for vagueness. *See Johnson*, 135 S. Ct. at 2557. He argues that *Johnson* renders unconstitutional his designation as a career offender under § 4B1.1 of the Guidelines.

The argument fails. On March 6, 2017, the Supreme Court refused to extend *Johnson*'s reasoning to the Guidelines' career offender provisions. *See Beckles v. United States*, 137 S. Ct. 886, 892 (2017). The Court explained that, "[u]nlike the ACCA . . . the advisory Guidelines do not fix the permissible range of sentences." *Id.* "[T]he Guidelines," therefore, "are not subject to a vagueness challenge under the Due Process Clause." *Id.*

The *Johnson* claim is therefore DENIED.

For the foregoing reasons, the Court holds that Smith is not entitled to relief under § 2255.

**APPEAL ISSUES**

A § 2255 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 253 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition and the *Johnson* claim. Because any appeal by Petitioner does not deserve attention, the Court DENIES a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal

14

would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore DENIED.[7]

IT IS SO ORDERED this 17th day of July 2018.

                                            s/ J. DANIEL BREEN
                                            UNITED STATES DISTRICT JUDGE

---

[7] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.